UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEAN MICHAEL RYAN,

        Plaintiff,                             Case No. 1:13-cv-525

v.                                               Honorable Robert Holmes Bell

CORIZON HEALTH CARE et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. The Court also issued an order (docket #23), granting Plaintiff's motions to file an amended complaint, and Plaintiff has since filed an amended complaint (docket #27).

Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will serve Plaintiff's amended complaint against Defendants Jensen, Buchemn, Watkins, MDOC and Stoddard. The Court will dismiss all other Defendants on grounds of

immunity and/or for failure to state a claim. The Court also will deny Plaintiff's motions seeking preliminary injunctive relief (docket ##6, 12, 29).

## Discussion

### I. Factual allegations

Plaintiff Sean Michael Ryan presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF), though he appears to complain about actions that occurred while he was housed at ICF and several other MDOC facilities: the Bellamy Creek Correctional Facility (IBC); the Earnest C. Brooks Correctional Facility (LRF); and the Charles Egeler Reception and Guidance Center (RGC). He sues the following corporate and institutional Defendants: Corizon Health Care (Corizon); the MDOC and its facilities ICF, IBC, LRF, and RGC. He also sues a variety of unknown individuals: unknown employees of Corizon (Unknown Part(y)(ies) #1); unknown MDOC custodial, correctional and supervisory staff (Unknown Part(y)(ies) #3); unknown MDOC medical staff (Unknown Part(y)(ies) #2), and unknown wardens and other supervisory staff at ICF, IBC, LRF, and RGC (Unknown Part(y)(ies) #4). In addition, he sues the following ICF employees: Warden Stoddard; Deputy Warden Huss; Resident Unit Manager (RUM) (unknown) Ball; Assistant Resident Unit Supervisors (ARUSs) (unknown) Barber, (unknown) Simon and (unknown) Buchemn; Correctional Officers (unknown) Jensen, (unknown) Martian, (unknown) Rutgers, (unknown) Teft, (unknown) Migris, and (unknown) Watkins; Doctor Roger A. Gerlach; and Sergeant (unknown) Kelly.

Plaintiff complains that he was in a severe accident on November 15, 2005, which resulted in two cervical spinal surgeries and two lumbar spinal surgeries. Prior to his incarceration in December 2010, he was found completely disabled and was receiving social security benefits.

Plaintiff states that, since his arrival at the MDOC, he has been given insufficient pain medication and mobility aids. He contends that he should be confined in a facility where he would never have to climb the stairs. He also claims that he should be provided meals in his cell and should be given a wheelchair. In addition, Plaintiff alleges that unspecified staff members have humiliated him by forcing him to crawl up the stairs, have permitted him to fall, and have provided inadequate assistance. Further, Plaintiff complains that Defendants collectively have retaliated against him for the filing of his lawsuit by preventing him from showering, going to the library, and going to the exercise yard through their failure to provide adequate mobility assistance. They also allegedly have retaliated by denying or refusing to process grievances, preventing him from receiving mail and library materials, damaging his mattress, and issuing misconducts for Plaintiff's failure to comply with orders to return to general population after he had requested placement in protective custody (in order to obtain meals in his cell).

Plaintiff mentions only four Defendants by name in the body of his complaint. He alleges that he missed a number of meals between June 30, 2013 and July 18, 2013, because he was forced to return to general population and was not receiving in-cell meals. During that period, of the six meals he received, Defendant Watkins threw two on the floor and Defendant Jensen spit in the remainder, in retaliation for Plaintiff's complaints and in violation of the Eighth Amendment. When Plaintiff filed a grievance about being denied food in violation of the Eighth Amendment, Defendant Buchemn retaliated against Plaintiff by telling Jensen and Watkins that they were being sued, inspiring additional acts of retaliation. Finally, Plaintiff alleges that Defendant Kelly denied Plaintiff's grievance complaining that he needed the use of a cane. Kelly responded to the grievance

by telling Plaintiff that a cane was not allowed and that, if Plaintiff got one, Kelly would break it and report that Plaintiff had tried to use the cane as a weapon.

Plaintiff alleges that Defendants' collective actions denied him his right to adequate medical care under the Eighth Amendment and violated the Americans with Disabilities Act (ADA). Plaintiff also alleges that he was denied access to the courts and was subjected to retaliation in violation of the First Amendment. Further, he complains that he has been denied due process through the Defendants' failure to follow MDOC policies and failure to allow him to attend misconduct hearings. In addition, he alleges various violations of state law, including claims of reckless endangerment, negligence, medical malpractice, and intentional infliction of emotional distress. For relief, Plaintiff seeks a variety of injunctions, together with $266,000,000.00 in compensatory and punitive damages.

II. Sovereign Immunity

A. § 1983

Plaintiff may not maintain a § 1983 action against the MDOC or its individual prisons. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has

specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses Plaintiff's § 1983 claims against the MDOC, ICF, IBC, LRF and RGC.

### B.  Americans with Disabilities Act (ADA)

Plaintiff complains that the MDOC has violated his rights under the ADA by failing to provide him adequate mobility aids and housing him in a location that interfered with his ability to walk to the dining hall, the library, and the health care unit without pain and risk of falling, thereby causing him to forego meals and to humiliate himself by climbing up stairs.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or

without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant and multiple known and unknown officials in both their individual and official capacities.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 157, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims upon the MDOC and appropriate officials acting in their official capacities. The Court will discuss the sufficiency of Plaintiff's allegations against particular Defendants in its review of the complaint for failure to state a claim.

III. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Despite Plaintiff's generalized complaints about the many actions and inactions of "Defendants" collectively, Plaintiff mentions only four Defendants in the body of his complaint: Defendants Jensen, Watkins, Buchemn and Kelly. He makes no allegation of specific conduct by

any of the remaining individual Defendants. His claims alleging constitutional violations by all Defendants other than Jensen, Watkins, Buchemn and Kelly therefore fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

In addition, to the extent that Plaintiff intends to allege that any supervisory Defendant, including Defendant Kelly, was responsible for the actions of his subordinate or for inadequately responding to a grievance, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As consequence, neither Defendant Kelly nor any other supervisory Defendant is liable for failing to supervise others or failing to resolve Plaintiff's grievance adequately.

Finally, to the extent that Plaintiff alleges that Defendant Kelly used harsh language in denying his grievance, his allegations fail to state a claim. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Kelly arising from his alleged verbal abuse.

In sum, Plaintiff has failed to allege that any Defendants other than Jensen, Watkins and Buchemn engaged in active unconstitutional behavior sufficient to state a claim under § 1983.

### B. ADA Claims

Plaintiff contends that all of the named Defendants have deprived him of access to benefits and services on account of his disability, in violation of the ADA. Specifically, he alleges that his housing placement and lack of mobility assistance interfere with his ability to access the library, the dining hall, and health care services.

Title II of the ADA provides that

> "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State," § 12131(1). [The Supreme Court has] previously held that this term includes state prisons. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

*United States v. Georgia*, 546 U.S. 151, 153-54 (2006). Thus, to state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under[,] the program, [services, or activities] by reason of his disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).

As the Court previously discussed, the State of Michigan, acting through the MDOC, is not necessarily immune from a damages claim under the ADA, because Title II abrogates state sovereign immunity for claims based on "conduct that actually violates the Fourteenth Amendment[.]" *Georgia*, 546 U.S. at 159. As a consequence, the Court will order service of the

amended complaint on Defendant MDOC. In addition, Plaintiff has named Warden Stoddard in his official capacity as a Defendant representing the MDOC at the ICF facility. Defendant Stoddard, acting in his official capacity, appears to be a proper Defendant for purposes of the conditions and actions that occurred at ICF. *Carten*, 282 F.3d at 396–97 (holding that the public entity and an official acting in his official capacity are proper Defendants under Title II of the ADA).

Plaintiff also names as Defendant Unknown Part(y)(ies) #4 the various unknown wardens and lower supervisory officials at ICF, IBC, LRF and RGC. The Court concludes at this juncture that Plaintiff may be able to identify one or more wardens who are appropriate officials to be sued in their official capacities for any ADA violations that occurred at their facilities, though their addition to the action will add nothing to Plaintiff's efforts to obtain relief, since the the real party in interest, the State of Michigan, already is a Defendant through the MDOC. Nevertheless, the Court will not dismiss the unknown wardens at this juncture. However, the lower level officials sued by Plaintiff in their official capacities are merely superfluous, as Plaintiff makes no particular allegations against those Defendants. In any event, the Court lacks sufficient information at this time to order service upon any of the unknown wardens (Unknown Part(y)(ies) #4). Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants MDOC and ICF Warden Stoddard.

However, the individual prisons named as Defendants in this action (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit. Moreover, Plaintiff's ADA claim, regardless of the particular institution at which Plaintiff was housed, is fully protected by his action against the MDOC. Therefore, Plaintiff's ADA action against the prison buildings will be dismissed.

Finally, Plaintiff sues all Defendants in their individual capacities for violations of the ADA. Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Thus, the Court will dismiss Plaintiff's individual-capacity ADA claims against all Defendants.

### C. State-law claims

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

To the extent that Plaintiff asserts violations of state law against Defendants whose federal claims have been dismissed, this Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state-law claims against Defendants Corizon Health Care, Huss, Ball, Barber, Simon, Martian, Rutgers, Teft, Migris, Gerlach, Kelly, ICF, IBC, LRF, RGC, Unknown Part(y)(ies) #1, Unknown Part(y)(ies) #2, and Unknown Part(y)(ies) #3 are dismissed without prejudice.

IV.     Motions Seeking Preliminary Relief

Plaintiff filed three motions seeking the following forms of preliminary injunctive relief: (1) an order preventing Defendants from denying him access to the library and requiring that he receive in-cell meals (docket #6); (2) a "personal protection order" barring Defendants generally from doing unpleasant things and writing false misconducts (docket #12); and (3) an order directing that Plaintiff be moved to a facility at which he would be closer to the library and the dining hall and would not need to climb stairs (docket #29). Plaintiff asserts that his needs are urgent, because his physical disabilities impair his ability to walk and climb, which prevent him from traveling to the library, the dining hall, the exercise yard and the showers easily, obligating him to navigate the stairs in a crawling or seated position.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*,

740 F.2d 432 at 438, n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. As previously discussed, Plaintiff has failed to identify in his § 1983 claims any individual Defendants who have taken or refused to take actions to deny Plaintiff adequate housing placement or medical care. As a consequence, Plaintiff has failed to demonstrate entitlement to relief on those claims.

Moreover, even though Plaintiff has stated a § 1983 claim against Defendants Jenkins, Watkins and Buchemn and an ADA claim against Defendants MDOC and Stoddard that are minimally sufficient to warrant service against them, it is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of the ADA.

In addition, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Although Plaintiff complains that Defendants Jenkins, Watkins and Buchemn are retaliating against him by interfering with his access to the courts by

limiting his access to the library and denying him grievances, it is apparent that any denial of access to the library has not impaired his access to the courts during the pendency of this action. Since filing his complaint, Plaintiff has filed fourteen separate motions and three proposed supplements to his complaint, together with an amended complaint and numerous letters.[1] In addition, while Plaintiff has alleged that he has unmet medical needs, he has not articulated an Eighth Amendment claim against any individual Defendant with respect to those allegations. He therefore cannot demonstrate a substantial likelihood of success on that claim. Further, while Plaintiff claims that he is being deprived of access to programs because of his disability, in violation of the ADA, he has not set forth facts showing an immediate, concrete and irreparable harm in the absence of an injunction. His frequent filings and his allegations suggest that he is not being denied access to the library that is impairing his constitutitional rights. Moreover, because he currently is housed in segregation, he is receiving in-cell meals and does not need to walk to the dining hall. (Am. Compl., docket #27, Page ID#257.) His allegations therefore fall short of demonstrating irreparable harm.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of

---

[1] To the extent that Plaintiff bases his motion for preliminary injunctive relief on the denial of his rights under the grievance process, he fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process and further interference with the grievance process will not create irreparable harm.

extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motions for preliminary relief (docket ##6, 12, 29) will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corizon Health Care, Huss, Ball, Barber, Simon, Martian, Rutgers, Teft, Migris, Gerlach, Kelly, ICF, IBC, LRF, RGC, Unknown Part(y)(ies) #1, Unknown Part(y)(ies) #2, and Unknown Part(y)(ies) #3 will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity or for failure to state a claim. Plaintiff's constitutional claims against the MDOC and Defendant Stoddard also are dismissed on grounds of immunity or for failure to state a claim. Plaintiffs state-law claims against Defendants Corizon Health Care, Huss, Ball, Barber, Simon, Martian, Rutgers, Teft, Migris, Gerlach, Kelly, ICF, IBC, LRF, RGC, Unknown Part(y)(ies) #1, Unknown Part(y)(ies) #2, and Unknown Part(y)(ies) #3 are dismissed without prejudice. The Court will serve Plaintiff's § 1983 claims complaint against Defendants Jensen, Watkins and Buchemn, and Plaintiff's ADA claims against Defendants MDOC and Stoddard.

An Order consistent with this Opinion will be entered.


Dated: October 28, 2013  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE